UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Anthony McCoy

_____

NAME OF PLAINTIFF(S)

v.

Dave and Busters Inc.

_____

NAME OF DEFENDANT(S)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JAN 22 2015 ★
LONG ISLAND OFFICE

COMPLAINT
Jury Trial Demanded

**CV 15 0465**

**BIANCO, J.**
**LINDSAY, M.**

This action is brought for discrimination in employment pursuant to (check only those that apply):

☑ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) (race, color, gender, religion, national origin).
**NOTE:** *In order to bring a suit in federal district court under Title VII, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 - 634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 92-592, the Civil Rights Act of 1991, Pub. L. No. 102-166).
**NOTE:** *In order to bring a suit in federal district court under the Age Discrimination in Employment Act, you must first file charges with the Equal Employment Opportunity Commission.*

☐ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 - 12117 (amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325 and the Civil Rights Act of 1991, Pub. L. No. 102-166).
**NOTE:** *In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*

-1-

Jurisdiction is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, and any related claims under New York law.

1. Plaintiff resides at:

_132 Martin Luther King Dr._
Street Address

_Nassau_, _NY_, _11550_, _516-642-5066_
County    State    Zip Code    Telephone Number

2. Defendant(s) resides at, or its business is located at:

_1504 Old Country Rd._
Street Address

_Nassau_, _Westbury_, _NY_, _11590_
County    City    State    Zip Code

3. The address at which I sought employment or was employed by the defendant(s) is:

_1504 Old Country Rd._
Street Address

_Nassau_, _Westbury_, _NY_, _11590_
County    City    State    Zip Code

4. The discriminatory conduct of which I complain in this action includes
   *(check only those that apply).*

   ___ Failure to hire.

   _✓_ Termination of my employment.

   ___ Failure to promote.

   ___ Failure to accommodate my disability.

   _✓_ Unequal terms and conditions of my employment.

   _✓_ Retaliation

   _✓_ Other acts *(specify)*: Misrepresentation by fraud, covering of racial discrimination, and wrongful termination.

   **NOTE:** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

5. It is my best recollection that the alleged discriminatory acts occurred on:
   Date(s) May 24 2014, June 8th, June 27th - July 3rd

6. I believe that the defendant(s) *(check one)*

   _✓_ is still committing these acts against me.

   ___ is not still committing these acts against me.

7. Defendant(s) discriminated against me based on my:
   *(check only those that apply and state the basis for discrimination, for example, what is your religion, if religious discrimination is alleged)*

   [✓] race _African American_    [✓] color _Black_

   [✓] gender/sex _Male_    [ ] religion _____

   [ ] national origin _____

   [ ] disability _____

   [ ] age. If age is checked, answer the following:

   I was born in _____. At the time(s) defendant(s) discriminated against me,
              Year
   I was [ ] more  [ ] less than 40 years old. *(check one).*

   -3-

**NOTE:** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

8. The facts of my case are as follows:

_See attached_

*(Attach additional sheets as necessary)*

**NOTE:** *As additional support for your claim, you may attach to this complaint a copy of the charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights, or the New York City Commission on Human Rights.*

9. It is my best recollection that I filed a charge with the New York State Division of Human Rights or the New York City Commission on Human Rights regarding defendant's alleged discriminatory conduct on: _June 30th 2014_ .
   Date

10. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct on: _____.
   Date

-4-

**Only litigants alleging age discrimination must answer Question #11.**

11. Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct *(check one)*:

    _____ 60 days or more have elapsed.

    _____ less than 60 days have elapsed.

12. The Equal Employment Opportunity Commission *(check one)*:

    _____ has not issued a Right to Sue letter.

    \_✓\_ has issued a Right to Sue letter, which I received on _November 26 2014_.
    Date

**NOTE:** Attach a copy of the Right to Sue Letter from the Equal Employment Opportunity Commission to this complaint.

WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, pre-judgment interest, costs, and attorney's fees.

PLAINTIFF'S SIGNATURE

Dated: _1/21/2015_

_132 Martin Luther King Dr_
Address

_Hempstead NY 11550_

_516-642-5066_
Phone Number

rev. 4/23/13

Complaint Attachment

I was hired on Oct 8 2013 at Westbury Dave and Busters no real issues other than being new had to work hard to get better hours and sections and be a good seller. I worked to the best of my abilities and helped others as needed or required I also win a slue weekly contests which caused my name to stay on the weekly winner of brag bucks . Months go by and I see new workers come and go and get better hours and sections than me, white males and females at the same time, this went on for months even complaining about it.   I would ask if there was any other jobs that I could do to better assist the restaurant and to better myself for promotion to make extra money since I am a single parent and the teaching field not working for me being I just earned my Bachelor of Science in Physical Education from Adelphi University working at Dave and Buster's was my backup plan since I loved the Food, Beverage and Hospitality field.   I was continually denied.   I did not work many parties in areas of the building where I was stationed for daily work therefore lead to no money being made during hours of my shift and after complaining about it, with there being nothing to do I would be told to leave and come back in a few hours.

To clear up the fact of me not knowing the rules of the job, in February I was sick and called out because of the flu and even provided a letter being able to return to work and cleared of the virus.   As for anytime I ever had to miss work it was reported hours before or I switched my shift with another employee and this happened several times even when my daughter broke her leg in April,    I called to inform them of missing work to tend to her issues. I always called if I was going to be late or miss work. There is also a work shift switch book used to switch shifts with other employees and requires managers approval.

May 24th I arrive at work at 1130 not much is going at work so I count my money for the day and manager Dan Haber snatched some money from my hand, I don't retaliate, he brings it back and I tell him he owes me some more money, he says yeah right, and keeps walking. A few minutes later myself Dan, Johnathan, and Gerard where on the bridge (the main office) and once again I said to Dan "you owe me some money" his response was "if you want your money go pick some cotton", I waited for a few seconds, then replied "you know I am calling HR" he laughed I walked away. A few minutes later he walks pass me laughing and jokingly says " Tony is going to call HR on me". I did not respond.

After Dan returned from vacation I worked a shift with him I was immediately sent home for an incorrect order of wings and not bringing them to the table. My next work shift I was written up for the incorrect order of wings, not cleaning area and not tipping out.

A few days later Manager Carlos Acosta approached me and said "I look like I could kill someone in a jokingly manner", My response was "yeah I want to punch somebody in the face because I didn't appreciate what was said to me", he said if I ever needed to talk to call him we exchanged numbers I called and left texts his only response was "driving I will hit you back later" , my reply to that was "I wanted to talk with you before I call Human Resources because I can no longer sit with this on my chest. I never got a response back and we didn't get a chance to talk since that day.

A few days from that one of the managers Mike Nocita informed me that I need to bring in my driver's license to complete the missing I-9 form verification to work and that it was coming from headquarters it was missing from my audit. I let him know that I had misplaced my ID at that time and told him soon as I find it I would bring it in as requested. I was not required to sign any disciplinary paperwork nor giving a deadline for submission at that time. His words were as submit it as soon as you find it.

I worked an overnight party on June25th-26th which I switched with the approval of Mike Nocita. No one informed me of any violations or suspensions. On June 27th I am calling in to work because I am running late it was the last day of school for my daughter.   General Manager Dan Eurell picks up the phone and in the most disgusting way tells me that I won't be able to work until I bring my license which I had already planned on turning in since I found my ID, he never tells me over the phone that I was not allowed to work my scheduled shift that day or next week. I get to work and attempt to clock in as usual, but denied because I was removed from the schedule without notice. I go see Dan Eurell and ask why can't I clock in he says that my shift has been covered today and next week and has me sign a suspension letter stating I could not work until July 4th for failure to comply with requests for drivers license in timely manner which I was never given a timeframe to do such by any manager on any given day.   I did not work on June 27th.

June 30th I Filed a complaint with New York State Division of Human Rights and called Dave and Busters Human Resources to make a complaint and speak with Robin Patton, I ask her about the audit and the missing paperwork and suspension, more importantly to complain about what was said and done to me. She informed me to send a written complaint by email, I informed her that I don't have a computer at home so it would be a few days. She said ok just send it in. Not knowingly on July 1st Ms. Patton sent me an email not a phone call an email, stating she received my schedule from Assistant General Manager Louis Anzola and I was due to work July 1st and July 2nd.   July 3rd   the day before I was to end my suspension and return to work I went to send my statement and saw an email from Ms. Patton terminating my job for work no shows on July 1st and July 2nd   and a statement saying that Dave and Busters completed their investigation into the alleged acts and found no evidence of any wrong doings. I was unjustly terminated without proper cause, deceived throughout this process, intimidated and harassed by managers of Dave and Busters and not giving fair opportunities for growth within the company. As a veteran of the United States Marine Corps and Operation Iraqi Freedom, I deserve to be treated with dignity, delicacy and respect having put my life on the line for our freedom, not to be treated inhumane.

EEOC Form 161 (11/09)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: Anthony McCoy<br>132 Martin Luther King Drive<br>Hempstead, NY 11550 | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |

☐    *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2014-03668 | Holly M. Woodyard,<br>State & Local Program Manager | (212) 336-3643 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☒   Other *(briefly state)*     **Charging Party wishes to pursue matter in Federal District Court.**

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*[signature]*

Kevin J. Berry,
District Director

November 26, 2014
*(Date Mailed)*

Enclosures(s)

cc:
DAVE & BUSTER'S, INC.
Attn: President / CEO
1504 Old Country Road
Westbury, NY 11590

Brendan Chao, Esq.
Attorney & Counsellor at Law
50 Merrick Road, 2nd Floor
Rockville Center, NY 11570



Littler Mendelson, P.C.
333 SE 2nd Avenue
Suite 2700
Miami, FL 33131

Rebecca Biller
415.276.2614 direct
305.400.7500 main
415.704.3267 fax
RBiller@littler.com

AUGUST 22, 2014

**VIA U.S. MAIL & FACSIMILE (516-483-6589)**

Ronald B. Brinn, Regional Director
New York State Division of Human Rights
175 Fulton Avenue, Suite 404
Hempstead, NY 11550



RECEIVED
AUG 2 5 2014
Hempstead Regional Office

Re: *Anthony McCoy v. Dave & Buster's, Inc.*
Case No. 10169706 – AMENDED STATEMENT OF POSITION

Dear Mr. Brinn:

This letter contains Dave & Buster's, Inc. ("D&B" or "Respondent") amended statement of position with respect to the above-referenced charge of discrimination (the "Amended Charge") filed by Mr. Anthony McCoy. Respondent incorporates by reference, as if fully stated herein, the entirety of its initial statement of position ("Initial Statement of Position") served on July 29, 2014. Respondent reserves the right to supplement or amend its response should additional information come to its attention.

## AMENDED STATEMENT OF POSITION

1. Anthony McCoy ("Tony") is an African American male, who served honorably in the United States Marine Corps from February 1997 to March 2007, including a six month deployment in Iraq.

**ANSWER:** D&B admits that Mr. McCoy self-identifies as an African American male. D&B lacks knowledge or information sufficient to admit or deny the remainder of allegations set forth in Paragraph 1 of the Amended Charge and therefore, denies each and every allegation not specifically admitted.

2. On October 8, 2013, Tony commenced employment as a waiter at Dave & Buster's, Inc., ("D&Bs") located at 1504 Old Country Rd, Westbury, NY 11590.

**ANSWER:** As set forth in D&B's Initial Statement of Position, Mr. McCoy was initially hired on or about January 15, 2008 as a member of D&B's Waitstaff at D&B's "Central" location in Dallas, Texas, and was terminated for job abandonment on March 8, 2008. *Initial Statement of Position* Exhibit B, 2008 Personnel Action Notice. On or about October, 8,

littler.com

Ronald Brinn, Regional Director
August 22, 2014
Page 2

2013, Mr. McCoy was re-hired as a member of D&B's Waitstaff at D&B's Westbury, New York location. D&B employed Mr. McCoy on a part-time basis as a Waitstaff member until July 3, 2014, when he was terminated, again, for job abandonment. *Initial Statement of Position* Exhibit C, 2014 Personnel Action Notice.

3. Dan Haber (Manager) was one of Tony's direct supervisors. Haber is a white male.

**ANSWER**: D&B admits Mr. Haber, Manager, self-identifies as a white male and is one of the many managers at the D&B Westbury, NY location

4. Tony has received several recognitions for his good work and does not have a history of discipline.

**ANSWER**: D&B lacks knowledge or information sufficient to admit or deny the allegations set forth in Paragraph 4 of the Amended Charge to the extent they do not pertain to Mr. McCoy's employment with D&B and therefore, denies each and every allegation not specifically admitted.

Mr. McCoy's personnel file does not contain any recognitions for good work, and Mr. McCoy did, in fact, have a history of discipline – both during his first tenure with D&B and his second tenure[1]. During his first tenure, he was disciplined on three occasions: (1) February 2, 2008 for failing to claim 100% of the tips he received and for being "short in his bag" (turning in less money than should have been collected based on his sales); (2) February 16, 2008 for not dropping proper denominations of cash and/or coin; and (3) February 22, 2008 for being tardy to his shift. *See* Exhibit O, Records of Discussion, attached hereto.

During Mr. McCoy's second tenure with D&B, beginning October, 8, 2013, Mr. McCoy was disciplined on five occasions: (1) April 14, 2014 for improper sales reporting; (2) April 17, 2014 for failing to declare the total amount of credit card tips he received; (3) April 21, 2014 receiving a low tip percentage indicative of poor service; (4) May 18, 2014 for failing to obtain a minimum of five Guest Pulse Surveys a month; and (5) June 8, 2014 for failing to follow procedures (i.e. clean his area, do sidework, tip out the bar, provide great guest service). *See* Exhibit P, Disciplinary Documentation. Further, based on his prior termination for job abandonment on March 8, 2008, Mr. McCoy was familiar with D&B's policy and termination procedure related to "no call, no show" incidents.

5. Despite Tony's positive work record, throughout his employment he was given shifts at less crowded times and would be placed in less crowded sections of the restaurant. Better

---

[1] In its Initial Statement of Position, D&B incorrectly stated that Mr. McCoy did not have any disciplinary documentation in his personnel file during his second tenure with D&B. D&B has since located disciplinary documentation that occurred during Mr. McCoy's second tenure with D&B, a copy of which is attached as Exhibit P.

Ronald Brinn, Regional Director
August 22, 2014
Page 3

working areas were assigned to white employees with less experience and less time on the job.

**ANSWER**: D&B denies that Mr. McCoy received different or worse job duties than other Waitstaff members due to his race. Further, at no point did Mr. McCoy ever voice any complaint to D&B that he was given different or worse duties than other Waitstaff members due to his race. D&B's Work Schedules Policy states that shifts available to employees are based on business needs, the employee's availability and quality of work performance, punctuality and cooperation. *See* Exhibit Q, Work Schedules Policy. Further, the Work Schedules Policy states that if an employee needs changes to or has concerns about his or her scheduled shifts, that such concerns should be brought to the attention of the Manager on Duty. *Id.* Mr. McCoy never voiced any concerns about his scheduled shifts. D&B denies that race factored into Waitstaff assignments. Moreover, D&B objects to the term "better working areas" as such term is subjective.

6. On May 24, 2014, Haber grabbed money from Tony's hand. Tony asked for the money back. In response Haber said, "go pick some cotton if you want your money back." Tony told Haber he was going to call Human Resources, but Haber laughed it off.

**ANSWER**: D&B admits that Mr. Haber claimed that on May 24, 2014 he jokingly took $20.00 from Mr. McCoy and that Mr. McCoy jokingly responded that Mr. Haber would need to give him $40.00 in return. Mr. Haber returned the $20.00 to Mr. McCoy. D&B denies that Mr. Haber said "go pick some cotton if you want your money back" or that he made any racial remarks of any kind. D&B refers the NYDHR to its Initial Statement of Position for a more thorough explanation of the alleged May 24, 2014 incident and D&B's investigation in response thereto.

7. Jonathan Sykes (sic) (Waiter) and Gerard B. [last name unknown] (Bowling Technician) were present and heard the racist comment directed at Tony. Neither Jonathon (sic) nor Gerard did anything in response to what was said.

**ANSWER**: D&B admits that Mr. McCoy claims that Jonathan Stykes and Gerard Bahnken witnessed the alleged May 24 2014 incident, but D&B denies that either Mr. Stykes or Mr. Bahnken heard a racist comment. In furtherance of D&B's investigation, D&B's HR Department obtained written witness statements from Mr. Stykes and Mr. Bahnken, both of whom denied having heard a racist comment. *Initial Statement of Position* Exhibit J, July 2, 2014 Statement Form by Jonathan Stykes; *Initial Statement of Position* Exhibit K, July 2, 2014 Statement Form by Gerard Bahnken. D&B refers the NYDHR to its Initial Statement of Position for a more thorough explanation of the alleged May 24, 2014 incident and D&B's investigation in response thereto.

8. Thereafter, Tony felt uncomfortable and avoided Haber.

Ronald Brinn, Regional Director
August 22, 2014
Page 4

**ANSWER**: D&B lacks knowledge or information sufficient to admit or deny the allegations set forth in Paragraph 8 of the Amended Charge and therefore, denies each and every allegation.

9. Shortly thereafter, Haber removed Tony from his serving duties because he allegedly made a mistake on an order although Haber did not explain to Tony why he was removed. Before leaving, Tony forgot to tip out and was issued a written discipline by Haber, for same. Tony forgot to tip out once before when he first started working and was not disciplined. Moreover, it is common for other employees to forget to tip out. Typically, they are not disciplined.

**ANSWER**: Due to the lack of specificity (i.e. lack of date) in the allegations of Paragraph 9 of the Amended Charge, D&B lacks knowledge or information sufficient to admit or deny the allegations set forth in Paragraph 9 of the Amended Charge and therefore, denies each and every allegation. Notwithstanding the foregoing, and as demonstrated by Exhibit P, Mr. McCoy was, in fact, disciplined on three occasions for issues related to tips: (1) April 17, 2014; (2) April 21, 2014; and (3) June 8, 2014. Further, pursuant to D&B's Wages, Tips, & Overtime Policy, and pursuant to federal and state tip-reporting laws, all employees eligible to receive tips, including Mr. McCoy, are required to report all tips received during a shift. *See* Exhibit R, Wages, Tips, & Overtime Policy.

10. June 25, 2014 was the last day Tony worked even though he was scheduled for additional days thereafter.

**ANSWER**: Mr. McCoy's last day of work was June 26, 2014 – not June 25, 2014. *Initial Statement of Position* Exhibit C, 2014 Personnel Action Notice. D&B admits that Mr. McCoy was scheduled for work after June 25, 2014. Mr. McCoy was scheduled to work on June 29, 2014 but failed to appear or call-in with an acceptable excuse for his absence. As set forth in the Initial Statement of Position, Ms. Patton informed Mr. McCoy that he was scheduled on the evening of July 1, 2014. *Initial Statement of Position* Exhibit G, July 1, 2014 Email from Robin Patton. Mr. McCoy was also scheduled to work on July 2, July 3, July 4, and July 6. *Initial Statement of Position* Exhibit H, July 1, 2014 Email from Luis Anzola, Assistant General Manager. Mr. McCoy never appeared for work on his scheduled shifts nor did he call-in, provide an acceptable reason for his absences, or request either vacation or a leave of absence. As a result of his failure to appear for his scheduled shifts, he was terminated for job abandonment, effective July 3, 2014.

11. Tony appeared for work as scheduled on June 27, 2014, and Dan Herring[2] (General Manager) told Tony that he could not work because D&Bs found that Tony was missing an I-9 form (employment eligibility verification). Tony was required to sign a document, which he did that day, acknowledging that he was notified. The document explained that he was

---

[2] The correct last name of General Manager Dan, is "Eurell" – not "Herring".

Ronald Brinn, Regional Director
August 22, 2014
Page 5

missing his I-9 form, and it also noted the date Tony could return to work, which was July 4, 2014.

**ANSWER**: D&B admits that due to Mr. McCoy's status as a re-hire, there was an oversight with respect to the completion of his I-9 form. After an internal audit by D&B's corporate office, D&B informed Mr. McCoy that he could not work until his I-9 form was complete. Specifically, on June 26, 2014, the General Manager called Mr. McCoy and informed him that he needed to bring in the necessary documentation for his I-9 before he could work, and that his deadline for doing so was July 4, 2014.

D&B had scheduled Mr. McCoy to work the evening of June 26th. That same day—the day he was informed of the I-9 oversight and the day he was scheduled to work—Mr. McCoy brought in the appropriate documentation before his shift began. Mr. McCoy completed his I-9 and he proceeded to work his full shift on June 26, 2014.

At no point was Mr. McCoy suspended or told that he could not return to work until July 4, 2014—that date was simply the deadline for providing the proper documentation to complete the I-9 form. Mr. McCoy submitted the necessary documentation for the I-9 form well before the deadline on June 26, 2014, and worked his shift that evening. He was also scheduled to work on June 29, July 1, July 2, July 3, July 4, and July 6. *Initial Statement of Position* Exhibit G, July 1, 2014 Email from Robin Patton; *Initial Statement of Position* Exhibit H, July 1, 2014 Email from Luis Anzola, Assistant General Manager.

12.   On June 30, 2014, Tony reported to Robin Patton (Human Resources Representative) the incident that occurred on May 24, 2014. Specifically, he repeated that Haber told him to "go pick some cotton." Patton accepted Tony's complaint over the phone, but requested a written statement be emailed to her.

**ANSWER**: D&B admits that on June 30, 2014, Mr. McCoy called the Human Resources Department located in Dallas, Texas and voiced a complaint to D&B's Senior Employee Relations Representative, Robin Patton, regarding the alleged May 24, 2014 incident, which allegedly occurred over a month before his report. D&B admits that Ms. Patton requested a written statement from Mr. McCoy. *Initial Statement of Position* Exhibit F, June 30, 2014 Email from Robin Patton; *Initial Statement of Position* Exhibit G, July 1, 2014 Email from Robin Patton. Despite Mr. McCoy never complying with Ms. Patton's multiple requests for a written statement, Dave & Buster's felt it was important to continue investigating Mr. McCoy's allegations based on his verbal recount of the situation.

13.   Also on June 30, 2014, Tony filed a complaint form with the New York State Division of Human Rights.

Ronald Brinn, Regional Director
August 22, 2014
Page 6

**ANSWER**: Mr. McCoy's complaint form with the New York State Division of Human Rights speaks for itself. D&B admits that there is a June 30, 2014 "received" stamp on the complaint form.

14. On July 3, 2014, Tony opened his email account to email Patton a written statement. Tony noticed an email from D&Bs. The email notified Tony of his termination due to alleged job abandonment. The email also notified him that D&Bs had concluded their internal investigation and found no discriminatory conduct.

**ANSWER**: D&B lacks knowledge or information sufficient to admit or deny the allegations set forth in Paragraph 14 of the Amended Charge with respect to the actions of Mr. McCoy on July 3, 2014, and therefore, denies each and every allegation as it pertains to the actions of Mr. McCoy. As set forth in the Initial Statement of Position, on July 3, 2014, Mr. McCoy was contacted via email and a mailed letter to inform him that the investigation into the alleged May 24, 2014 incident had been completed and that none of the witnesses corroborated Mr. McCoy's allegations. In addition, Mr. McCoy was informed that due to his failure to report to work or call in with an acceptable reason for his absences on July 1 and July 2, 2014, that he was being terminated for job abandonment, effective July 3, 2014. *Initial Statement of Position* Exhibit L, July 3, 2014 Email from Robin Patton; *Initial Statement of Position* Exhibit M, July 3, 2014 Letter from Robin Patton.

## CONCLUSION

There is no evidence that D&B discriminated or retaliated against Mr. McCoy because of his race. D&B treated Mr. McCoy in an appropriate, non-discriminatory manner and provided him with equal employment opportunities during his employment. D&B has further presented legitimate, non-discriminatory reasons for his termination. As evidenced by Mr. McCoy's prior termination for job abandonment on March 8, 2008 (*Initial Statement of Position* Exhibit B), Mr. McCoy was familiar with D&B's procedures regarding "no call, no show" incidents, and knew or should have known that his failure to report to work or call in with an acceptable reason for his absences on June 29, July 1 and July 2, 2014 would result in termination due to job abandonment.

D&B does not retaliate against employees who bring complaints or concerns to its attention, regardless of whether such a complaint rises to the level of "protected activity." *Initial Statement of Position* Exhibit A, p. 10. Upon receipt of Mr. McCoy's June 30, 2014 complaint, D&B immediately began an investigation into Mr. McCoy's allegations and interviewed the witnesses he named (Mr. Stykes and Mr. Bahnken) as well as the manager involved (Mr. Haber). Through its internal investigation, D&B could not substantiate the complaint made by Mr. McCoy, as all witnesses involved denied hearing any racial slur or comment.

Ronald Brinn, Regional Director
August 22, 2014
Page 7


Because Mr. McCoy is unable to support his allegations of discriminatory or retaliatory treatment based on race, and because D&B has been able to refute each allegation with more than sufficient evidence to support its legitimate, business-related reasons, Mr. McCoy's Charge should be dismissed with a finding that there is no cause to believe race discrimination occurred.

Sincerely,

LITTLER MENDELSON, P.C.

Rebecca Biller

RB/mp

cc:   Celeste R. Yeager, Esq. (via email w/encs)