# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

№ 15-CV-0465 (JFB) (AYS)

———————————

ANTHONY MCCOY,

Plaintiff,

VERSUS

DAVE & BUSTER'S, INC.,

Defendant.

———————————

**MEMORANDUM AND ORDER**
January 24, 2018

———————————

JOSEPH F. BIANCO, District Judge:

On January 22, 2015, plaintiff Anthony McCoy ("plaintiff"), proceeding *pro se* and *in forma pauperis*, commenced this action against defendant Dave & Buster's, Inc. ("defendant" or "D&B"), alleging discrimination and retaliation based on race, color, and gender under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), as well as fraud relating to his employment with and termination from D&B.

Presently before the Court is a motion by D&B to compel arbitration and to stay this action.  For the reasons set forth herein, the Court grants defendant's motion and stays this action pending arbitration.

## I. BACKGROUND

### A. Facts

The Court takes the following facts from the complaint (ECF No. 1) and the Declarations of Rachel A. Seaton, Esq. ("Seaton Decl.," ECF No. 23-2) and Jennifer Yarbrough ("Yarbrough Decl.," ECF No. 23-3) filed in support of defendant's motion to compel arbitration and to stay this action and the exhibits attached thereto.[1]

("While it is generally improper to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is proper (and in fact necessary) to consider such

---

[1] The Court may properly consider documents outside of the pleadings for purposes of deciding a motion to compel arbitration.  *See BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06 Civ. 839(HB), 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006)

Plaintiff was employed as a waiter at D&B in Westbury, New York, from on or about October 8, 2013 until on or about July 3, 2014. (Compl. 6-7.) In early October 2013, prior to plaintiff commencing his employment at D&B, D&B sent plaintiff an email as part of its "routine onboarding process." (Yarbrough Decl. ¶ 3.) The email contained a link to D&B's secure website, where plaintiff was required to create a unique user profile and complete his new hire paperwork. (*Id.*) Plaintiff's unique user profile included, among other things, an electronic signature. (*Id.*) Plaintiff used a mouse to sign his name to create his electronic signature. (*Id.*) The new hire paperwork included, among other things, an "Arbitration Agreement by and between Dave & Buster's, Inc. and its Subsidiaries and Affiliates (collectively, the 'Company') and Employee" (the "arbitration agreement") as a stand-alone electronic document. (*Id.*)

The arbitration agreement states, in relevant part:

> **Dispute.** The Company and Employee agree that any legal or equitable dispute or controversy arising under, out of, in connection with, or in relation to the employment of Employee, the terms and conditions of Employee's employment by the Company, or the termination of Employee by the Company, shall be resolved exclusively through binding arbitration. This Agreement applies to the following allegations, disputes, and claims for relief, but is not limited to those listed herein: wrongful discharge or discrimination because of the Employee's race, color, religion, age, disability, gender,

> sexual orientation, or national origin under federal, state or local statutory and/or common law; employment discrimination or failure to accommodate based on federal, state, or local statutes, ordinances, or governmental regulations; retaliatory discharge; compensation disputes; sexual harassment claims; Employee Retirement Income Security Act ("ERISA") violations; Fair Labor Standards Act ("FLSA") (wage and hour) and Family Medical Leave Act ("FMLA") claims and violations; breach of contract, and any other statutory and/or common law claims and disputes relating to the employment relationship including but not limited to employment-related tort claims (collectively "Disputes"). This Agreement shall apply to any such disputes or controversies involving Employee and the Company and/or its shareholders, directors, officers, managers, supervisors and other employees. The parties agree that this Agreement does not cover claims for unemployment compensation benefits, workers compensation benefits, or claims by the Company for injunctive relief for violation of any non-competition agreement between Employee and the Company, unfair competition, or the use, disclosure, or misappropriation of trade secrets or confidential information of the Company. All claims, disputes, or controversies arising out of, or related to this Agreement, including but not limited to its validity, scope, interpretation, enforceability, performance, breach,

---

extrinsic evidence when faced with a motion to compel arbitration." (citing *Sphere Drake Ins. Ltd. v.*

*Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 32-33 (2d Cir. 2001))).

or other challenge to the authority or capacity of any person signing this Agreement, shall be determined by binding arbitration as described herein.

**Venue.** The arbitration proceedings shall be conducted in Dallas, Texas (unless Employee and the Company agree to another location in writing) in accordance with the Employment Arbitration Rules of the American Arbitration Association ("AAA") in effect at the time a demand for arbitration is made (except that the arbitrator shall apply the Federal Rules of Evidence during the arbitration sessions with respect to the admissibility of evidence). The arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. § 1-16 (the "Act"). The making, validity, scope, interpretation and enforceability of this Agreement, including, but not limited to, who shall be parties to the arbitration and what issues have been submitted to arbitration, shall be determined by the arbitrators chosen in accordance with this Agreement.

**Exclusivity of ADR Procedure.** Resolution of any Dispute pursuant to this Agreement is intended to be the sole remedy and final and binding on the Parties to the maximum extent permitted by the [Federal Arbitration] Act. The Parties shall be precluded from bringing or raising in court or before any other forum any Dispute which could have been brought or raised pursuant to this Agreement, unless the right to pursue a statutory claim or remedy is expressly preserved by law.

**Court and Administrative Proceedings.** If any litigation or administrative proceeding is pending at the time of submission of a claim under the Agreement, the party who commenced the litigation or proceeding will promptly move to discontinue or stay it. A party who contends that a claim, dispute or issue is not subject to final and binding resolution under the Agreement nonetheless shall promptly move to stay any litigation or proceeding on that claim, dispute or issue pending the arbitrator's rendering of an Award; and if that Party fails to so move, the other party may do so.

(Yarbrough Decl. Ex. B at 3, 4, 7.)

After viewing the arbitration agreement, plaintiff was requested to electronically sign an Arbitration Agreement Acknowledgement form (the "acknowledgment"). (Yarbrough Decl. ¶ 4.) The acknowledgment states, in relevant part, "I acknowledge by my signature below that I have received, read, and familiarized myself with Dave & Buster's Arbitration Agreement." (Yarbrough Decl. Ex. A.) Plaintiff electronically signed the acknowledgment on October 2, 2013. (*Id.*; Yarbrough Decl. ¶ 4.) Plaintiff was required to sign the acknowledgment in order to commence employment at D&B. (Yarbrough Decl. ¶ 4.)

On July 3, 2014, D&B terminated plaintiff's employment. (Compl. 7.) Plaintiff alleges that he was "unjustly terminated without proper cause, deceived throughout th[e] process, intimidated and harassed by managers of Dave and Buster[']s and not giv[en] fair opportunities for growth within the company." (*Id.*)

B. Procedural History

Plaintiff filed his complaint on January 22, 2015. Defendant answered the complaint on April 9, 2015. (ECF No. 8.) On April 19, 2017, Magistrate Judge Arlene R. Lindsay[2] held an initial conference with the parties, during which Judge Lindsay referred the matter to the Court's Mediation Program. (ECF No. 15.) On May 4, 2017, Ronald Lee Goldstein, Esq. entered a notice of appearance as pro bono counsel on behalf of plaintiff for the limited purpose of representing plaintiff during the mediation. (ECF No. 16.)

On June 26, 2017, the parties commenced mediation. (*See* ECF No. 18.) During the mediation, counsel for D&B learned that there was an arbitration agreement between plaintiff and D&B. (Seaton Decl. ¶ 7.) On June 30, 2017, counsel for D&B sent plaintiff an email enclosing the arbitration agreement and the electronically signed acknowledgement; advising plaintiff that he had signed the acknowledgment on October 2, 2013; requesting that plaintiff dismiss this case and proceed to arbitration; and informing plaintiff that, in the event he did not dismiss this case, defendant would move the court to compel arbitration and dismiss this action. (Seaton Decl. Ex. A at 1-2.) Plaintiff responded on July 6, 2017, stating, among other things, that he would not

dismiss this action in favor of arbitration. (*Id.* at 1.)

On August 4, 2017, defendant moved to compel arbitration and to stay this action. (ECF No. 23.)[3] Plaintiff opposed the motion on December 1, 2017. (ECF No. 35.) Defendant replied on December 18, 2017. (ECF No. 36.)[4] Plaintiff submitted an opposition to defendant's reply brief on January 18, 2018. (ECF No. 37.) The Court has fully considered the parties' submissions.

## II. STANDARD OF REVIEW

Motions to compel arbitration are evaluated under a standard similar to the standard for summary judgment motions. *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir.1980)); *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010). The court must "consider all relevant, admissible evidence" and "draw all reasonable inferences in favor of the non-moving party." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (internal citation omitted). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4). If, however, the arbitrability of the dispute can be decided as a matter of law based on the undisputed facts

---

[2] On October 6, 2017, Judge Lindsay recused herself from this matter pursuant to 28 U.S.C. § 455, and the matter was reassigned to Magistrate Judge Anne Y. Shields. (ECF No. 28.)

[3] Defendant also moved to amend its answer to add affirmative defenses relating to the arbitration agreement on July 18, 2017 (ECF No. 21), and on August 9, 2017, the Court granted the motion as unopposed (ECF No. 24). Defendant submitted its amended answer on August 22, 2017, adding the following affirmative defenses: (1) "[p]laintiff is barred from obtaining relief from this Court because he has waived his right to proceed in court and has

failed to pursue his claims through arbitration, in accordance with his agreement to arbitrate"; (2) "[t]he Court lacks jurisdiction over Plaintiff's claims due to the existence of Plaintiff's agreement to arbitrate all claims against Defendant"; and (3) "[v]enue is inappropriate in the Eastern District of New York due to the existence of Plaintiff's agreement to arbitrate all claims against Defendant." (ECF No. 26 at 9.)

[4] In its reply brief, defendant argues that plaintiff's opposition brief should be stricken as untimely. (*Id.* at 5-6.) However, given the lack of prejudice to defendant, the Court, in its discretion, has fully considered plaintiff's opposition brief.

in the record, the court "may rule on the basis of that legal issue and 'avoid the need for further court proceedings.'" *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011) (quoting *Bensadoun*, 316 F.3d at 175).

## III. DISCUSSION

The Federal Arbitration Act ("FAA") mandates that arbitration agreements "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This statutory provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted). Thus, "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Id.* (internal citation omitted). Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. In deciding whether to stay an action in favor of arbitration, the Second Circuit has instructed a district court to conduct the following inquiry:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998), *abrogated on other grounds by Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 596 (2015)).

"[C]ourts presume that the parties intend courts, not arbitrators, to decide . . . disputes about 'arbitrability.'" *BG Grp., PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1206 (2014). Disputes about arbitrability "typically involve matters of a kind that 'contracting parties would likely have expected a court' to decide,'" including "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a general type of controversy." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). The presumption in favor of judicial review may be overcome if the parties have "clearly and unmistakably" delegated to an arbitrator the authority to resolve issues of arbitrability. *Howsam*, 537 U.S. at 83 (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). However, whether a party

has agreed to arbitrate in the first place is a gateway issue that only a court can decide. *VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*, 717 F.3d 322, 326 n.2 (2d Cir. 2013) (noting that, while other questions of arbitrability may be delegated to the arbitrator, "[t]he more basic issue . . . of whether the parties agreed to arbitrate in the first place is one only a court can answer, since in the absence of any arbitration agreement at all, 'questions of arbitrability' could hardly have been clearly and unmistakably given over to an arbitrator").

Here, plaintiff does not dispute, and the Court likewise concludes, that plaintiff agreed to arbitrate with D&B by entering into the arbitration agreement and that the arbitration agreement encompasses plaintiff's claims in this action. Instead, plaintiff argues that: (1) the FAA does not apply to the arbitration agreement; (2) plaintiff's Title VII claims are not arbitrable; and (3) the arbitration agreement is unenforceable.[5] The Court addresses each

---

[5] During the pre-motion conference on July 18, 2017 (*see* ECF No. 22), plaintiff raised objecting to defendant's motion to compel arbitration on the basis that defendant waited too long to file the motion—that is, that defendant waived its right to compel arbitration. Courts may decide questions of waiver where, as here, the "party seeking arbitration has engaged in . . . prior litigation." *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 456 n.12 (2d Cir. 1995). However, because plaintiff did not raise this issue in his opposition brief (or his response to defendant's reply brief), he has waived any argument that defendant waived its right to arbitration. In any event, even if the waiver argument were preserved, the Court concludes that defendant did not waive its right to compel arbitration in the instant action.

In determining whether a party has waived its right to arbitration, courts consider "(1) the time elapsed from the commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice." *PPG Indus., Inc. v Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997). While "[t]here is no rigid formula or bright-line rule for identifying when a party has waived its right to arbitration . . . '[t]he key to a waiver analysis is prejudice.'" *Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010) (third alteration in original) (quoting *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002) (per curiam)). "Waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated." *Thyssen*, 310 F.3d at 105. Moreover, "[t]here is a strong presumption in favor of arbitration[, and] waiver of the right to arbitration is not to be lightly inferred." *Id.* at 104-05

(second alteration in original) (quoting *Coca-Cola Bottling Co. of N.Y., Inc. v. Soft Drink and Brewery Workers Union Local 812, Int'l Bhd. of Teamsters*, 242 F.3d 52, 57 (2d Cir. 2001)).

Here, the factors weigh against waiver. First, although over two years elapsed from the commencement of the litigation to defendant's motion to compel arbitration, "[d]elay alone, without any prejudice to the opposing party aside from expense and inconvenience, is insufficient to constitute waiver." *Russo v. Simmons*, 723 F. Supp. 220, 223 (S.D.N.Y. 1989) (citing *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985)). In addition, as discussed *supra*, this action was dormant for most of this period, and defendant moved to compel arbitration shortly after discovering the existence of the arbitration agreement. *See id.* (finding no waiver when seven-month delay in moving to compel arbitration "was caused by defendants' first counsel not being aware of the option to arbitrate, and then by the substitution of counsel" and plaintiffs had not demonstrated that they had been sufficiently prejudiced by the delay). Second, the parties have not engaged in protracted litigation—the parties did not conduct discovery during the two years in which this case was inactive, there has been no discovery on the merits, and, aside from the instant motion, the parties have not filed any substantive motions. (*See* Seaton Decl. ¶¶ 4, 12.) Third, and significantly, plaintiff has not demonstrated that he has been prejudiced by the delay, and the Court likewise concludes that there is no evidence of prejudice. As defendant correctly states in its brief in support of its motion to compel arbitration, "[a]rbitration would not require Plaintiff to expend additional resources to conduct discovery or prepare for trial, nor would it delay the resolution of the case" because "the parties have not yet begun discovery on the merits" and "Plaintiff would still

argument in turn.

A. The FAA Applies

Plaintiff asserts that the FAA is not applicable to the instant action because "[t]he Federal Arbitration Act was created for the Purpose of Maritime Transactions and Commerce [and] does not include Contracts of Employment or Material Conditions of Employments." (ECF No. 35 at 1.) Plaintiff appears to argue both (1) that employment contracts are excepted under § 1 of the FAA, which provides, in relevant part, that the FAA shall not "apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce"; and (2) that the arbitration agreement is not covered by the FAA because it is not a "transaction" within the meaning of § 2 of the FAA, which provides, in relevant part, that arbitration agreements "in any maritime transaction or a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." For support, plaintiff relies on *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) and *Craft v. Campbell Soup Co.*, 177 F.3d 1083 (9th Cir. 1998).

In *Circuit City*, however, the Supreme Court squarely rejected plaintiff's arguments. There, respondent argued, as plaintiff does here, that employment contracts are not "contract[s] evidencing a transaction involving interstate commerce" under § 2 of the FAA because the term "transaction" refers only to commercial contracts. 532 U.S. at 113. The Supreme Court dismissed respondent's argument, finding that

employment contracts fall within the scope of § 2 of the FAA—any other interpretation would render the language in § 1 of the FAA exempting "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" superfluous. *Id.* The Supreme Court then proceeded to hold that § 1 of the FAA exempts only employment contracts for *transportation workers*—not employment contracts generally.[6] *Id.* at 114-19. Accordingly, the law is clear that the FAA applies to employment contracts for non-transportation workers, including the arbitration agreement between plaintiff and D&B.

B. Plaintiff's Title VII Claims Are Arbitrable

Plaintiff also appears to argue that his Title VII claims are not subject to arbitration, asserting in his opposition brief that, "[i]n this Civil Matter we also look to the Seventh Amendment which a Trial by Jury is preserved in all claims of Civil Matters brought into Federal Courts when Federal Civil Rights Laws have been violated"; and "Pro Se Plaintiff[']s Civil Rights under the Civil Rights Act of 1964 have been violated by Defendant's [sic] and [he] seeks remedies by Trial as Arbitration Agreements is not enforceable and *does not supersede Federal Law* or fall within the Federal Arbitration Act." (ECF No. 35 at 2 (emphasis added).) In response, defendant asserts that the Second Circuit has repeatedly made clear that Title VII claims can be subject to an otherwise valid arbitration agreement. The Court agrees.

It is well settled that Title VII claims can be the subject of an arbitration agreement,

---

retain a forum to pursue his claims, and likely on a more expedited basis." (ECF No. 23-1 at 15.) Accordingly, defendant has not waived its right to arbitration.

[6] The Supreme Court's decision in *Circuit City* also abrogated *Craft*, 177 F.3d 1083, the other case on which plaintiff relies. 532 U.S. at 113-19.

including a pre-dispute compulsory arbitration agreement—an agreement where employees are required to arbitrate employment-related disputes as a condition of employment—like the one at issue here. *See, e.g.*, *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 266 (2009) ("This 'Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law.'" (quoting *Circuit City*, 532 U.S. at 123)); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 204-07 (2d Cir. 1999), *cert. denied*, 531 U.S. 1069 (2001) (concluding that the Civil Rights Act of 1991 "evinces a plain Congressional purpose of encouraging arbitration of Title VII Claims" and enforcing a compulsory arbitration agreement as to such claims); *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 148 (2d Cir. 2004) (affirming former employee's Title VII claims were subject to mandatory arbitration). Thus, any assertion that Congress intended Title VII claims to be nonarbitrable is without merit.

C. The Court Defers Issues of Enforceability to the Arbitrator

Finally, as noted *supra*, plaintiff also asserts that the "Arbitration Agreements is not enforceable." (ECF No. 35 at 2.) As apparent support for this assertion, plaintiff states the following in his opposition brief:

> In other cases involving Arbitration Agreements such as Armendariz v Foundation Health Psychcare and Services Inc., 6 P. 3d 669 - Cal: Supreme Court 2000 ruled agreement was unenforceable due to unilateral bargaining power to the employer, lack [of] discovery for evidence, and does not include a recovery of damages to include general and punitive and other remedies allowed by state and federal laws.

(ECF No. 35 at 2.)[7]  In his opposition to defendant's reply brief, plaintiff further states that "Dave and Buster[']s Arbitration Agreement gives total and absolute bargaining power to Dave and Buster[']s, no where [sic] in the agreement does it give any future or current employee bargaining power, all employee contracts are required to give unilateral bargaining between employee and employer." (ECF No. 37 at 1-2.) In addition, plaintiff also claims there that defendant is "fighting so hard to get this to arbitration to limit damages because they already know everything [plaintiff] brought forth in this case is absolutely true and will be uncovered when discovery is continued." (*Id.* at 1.)

Liberally construing plaintiff's claims, *see, e.g.*, *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) ("It is well settled that *pro*

---

[7] Specifically, in *Armendariz v. Foundation Health Psychcare Services, Inc.*, the case on which plaintiff relies, the court found that (1) the at-issue arbitration agreement was unconscionably unilateral because it was limited in scope to wrongful termination claims and only mandated arbitration of the employee's claims, 6 P. 3d 669, 694 (Cal. 2000); and (2) a provision in the arbitration agreement limiting employees' remedies to back pay (and thereby precluding other damages available in statutory discrimination claims and tort) was contrary to public policy, unlawful, and further compounded the one-sidedness of the agreement, *id.* at 682-83, 694. The court, however, rejected the employees' contention that the arbitration agreement did not guarantee adequate discovery to vindicate their discrimination claims, and instead found that the arbitration agreement's incorporation of the California Arbitration Act rules (and the discovery provisions therein) was sufficient. *Id.* at 683-84.

se litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." (citations omitted)), the Court assumes that plaintiff challenges the arbitration agreement as unenforceable on the following bases—inequality of bargaining power, limitation of damages or remedies for plaintiff's employment-related claims, and insufficient discovery.  The Court, however, does not decide this issue, because, as defendant asserts, the arbitration agreement delegates questions of enforceability to the arbitrator.

1. The Parties Clearly and Unmistakably Delegated Enforceability Issues to the Arbitrator

As stated *supra*, parties may delegate to the arbitrator gateway issues of arbitrability if the delegation is clear and unmistakable. *BG Grp.*, 134 S. Ct. at 1206-07; *Bazzle*, 539 U.S. at 452; *Howsam*, 537 U.S. at 83-84. Such gateway issues include disputes regarding the validity or enforceability of an arbitration agreement.  *See Bazzle*, 539 U.S. at 452; *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-70, 69 n.1 (2010) (noting the parties did not dispute that the arbitration agreement clearly and unmistakably delegated questions of enforceability to the arbitrator).

Here, the arbitration agreement clearly and unmistakably delegates enforceability disputes to the arbitrator.  First, the arbitration agreement provides that "[a]ll claims, disputes, or controversies arising out of, or related to this Agreement, including but not limited to its validity, scope,

interpretation, enforceability, performance, breach, or other challenge to the authority or capacity of any person signing this Agreement, shall be determined by binding arbitration as described herein." (Yarbrough Decl. Ex. B at 3.)[8]  Courts in this circuit have repeatedly found similar language clear and unmistakable evidence that the parties agreed to arbitrate issues of arbitrability.  *See, e.g.*, *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 52-53 (E.D.N.Y. 2017) (provision stating that the arbitrator would decide disputes "arising out of or relating to interpretation or application of th[e] Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision" was clear and unmistakable delegation); *Washington v. William Morris Endeavor Entm't, LLC*, No. 10 Civ. 9647(PKC)(JCF), 2011 WL 3251504, at *6 (S.D.N.Y. July 20, 2011) (provision providing that the arbitrator "shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of th[e] Agreement, including but not limited to any claim that all o[r] any part of th[e] Agreement is void or voidable" clearly and unmistakably authorized the arbitrator alone "to decide issues of arbitrability, including whether the [Agreement] and any part thereof [wa]s enforceable").  Second, the arbitration agreement incorporates the Employment Arbitration Rules of the American Arbitration Association ("AAA") (Yarbrough Decl. Ex. B at 3), which provide, in relevant part, that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with

---

[8]  The arbitration agreement further states:  "The making, validity, scope, interpretation and enforceability of this Agreement, including, but not limited to, who shall be parties to the arbitration and what issues have been submitted to arbitration, shall

be determined by the arbitrators chosen in accordance with this Agreement." (*Id.*)  These clauses are referred to herein as the "delegation clauses."

respect to the existence, scope or validity of the arbitration agreement," AAA Employment Arbitration Rule 6(a). The Second Circuit has "held that when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005). Accordingly, plaintiff and D&B agreed to arbitrate disputes regarding the enforceability of the arbitration agreement.

### 2. The Court Must Treat the Delegation Clauses as Valid

Finding clear and unmistakable delegation, however, does not end the inquiry. Here, the Court must also determine whether plaintiff specifically challenges the enforceability of the delegation clauses. If

so, the Court "must consider the challenge" under the relevant state law.[9] *Rent-A-Center*, 561 U.S. at 71, 73. If, however, plaintiff challenges another provision of the arbitration agreement or the arbitration agreement as a whole, the court must "treat [the delegation clauses] as valid under § 2 [of the FAA], and must enforce [them under the FAA], leaving any challenge to the validity of the [arbitration] [a]greement as a whole for the arbitrator." *Id.* at 72.[10]

The Court concludes that plaintiff's enforceability challenges do not go to the validity of the delegation clauses and, therefore, that it must defer such challenges to the arbitrator. Like in *Rent-A-Center*, plaintiff fails to even mention the delegation clauses in either of his opposition briefs. *See id.* at 72-73. Moreover, assuming plaintiff challenges the arbitration agreement as unenforceable for the reasons discussed *supra*—inequality of bargaining power,

---

[9] The parties do not explicitly discuss what state law applies in their motion papers. The arbitration agreement, however, provides that "[t]he arbitrator shall apply the substantive law of the state in which the dispute arose, or federal law, or both, as applicable to the claims asserted." (Yarbrough Decl. Ex. B at 5.) While courts in this district sitting with federal question jurisdiction have applied the choice-of-law rules of the forum state (rather than federal common law) when determining the validity of a contract under state law, *see, e.g.*, *Klein v. ATP Flight School, LLP*, No. 14–CV–1522 (JFB)(GRB), 2014 WL 3013294, at *5 & n.3 (E.D.N.Y. July 3, 2014) (applying New York choice-of-law rules to determine which state's law applied to questions of unconscionability in federal question case), here, the Court need not, and does not, decide what choice-of-law rule applies because "[c]ontractual choice of law provisions are generally enforceable under both New York law and federal common law," *Arnone v. Aetna Life Ins. Co.*, 860 F.3d 97, 108 (2d Cir. 2017). Accordingly, given that the dispute arose in New York, the Court determines that New York state law applies to questions of enforceability.

[10] In *Rent-A-Center*, the Supreme Court considered whether, under the FAA, the court or an arbitrator

decides enforceability challenges where, as here, the arbitration agreement explicitly delegates that decision to the arbitrator. *Id.* at 65. There, the Court stated that a delegation provision is "simply an additional, antecedent agreement that the party seeking arbitration asks the federal court to enforce" and thus "is valid under § 2 [of the FAA] 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* at 70 (quoting 9 U.S.C. § 2). The Court then explained that, because § 2 of the FAA provides that a written agreement to arbitrate "is 'valid, irrevocable, and enforceable' *without mention* of the validity of the contract in which it is contained[,] . . . a party's challenge to another provision of the contract or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id.* (quoting 9 U.S.C. § 2). Put differently, a specific agreement to arbitrate, such as a delegation provision, "is severable from the remainder of the contract." *Id.* at 70-71 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006)). Accordingly, the Court held that, unless a party challenges the delegation provision specifically, the court must treat that provision as valid under § 2 of the FAA and defer such challenges to the arbitrator. *Id.* at 72.

limited damages or remedies for plaintiff's employment-related claims, and insufficient discovery—these challenges do not directly apply to the delegation clauses.[11]

First, the Court determines that plaintiff's claim regarding inequality of bargaining power challenges the arbitration agreement as a whole, rather than the delegation clauses specifically.    Again, plaintiff does not reference the delegation clauses in his submissions to the Court.   In addition, in plaintiff's opposition to defendant's reply brief, plaintiff references the arbitration agreement as a whole as "giv[ing] total and absolute bargaining power" to D&B and asserts that "no where [sic] in the agreement does it give any future or current employee bargaining power," further supporting this conclusion. (ECF No. 37 at 1.)  Further, to the extent plaintiff bases his argument on the *Armendariz* court's holding that a nonmutual requirement that employees arbitrate certain employment-related claims was unconscionable, this argument is plainly not directed at the delegation clauses. *See Rent-A-Center*, 561 U.S. at 73 (respondent's claim that the arbitration agreement was unconscionable because it was one sided for requiring arbitration of claims only an employee was likely to bring "clearly did not go to the validity of the delegation provision").    Second, the arbitration agreement's alleged limitation of damages or remedies for plaintiff's employment-related claims is wholly unrelated to the delegation clauses.  Finally, although plaintiff could conceivably make the "difficult . . . to sustain" argument that discovery procedures

render the delegation clauses unenforceable, *id.* at 74, plaintiff fails to do so here. Moreover, plaintiff's reliance on *Armendariz*—where the court rejected employees' argument that the discovery provisions under the at-issue arbitration agreement prevented the employees from vindicating their *discrimination claims*— suggests that any concern plaintiff has regarding the arbitration agreement's discovery procedures is directed at the agreement to arbitrate his employment discrimination claims, and not at the agreements to delegate issues of enforceability to the arbitrator. Accordingly, because plaintiff does not separately challenge the enforceability of the delegation clauses, the court treats the delegation clauses as valid and delegates any enforceability challenges to the arbitrator. *Rent-A-Center*, 561 U.S. at 72-75 (finding the district court correctly concluded that respondent's unconscionability arguments—including that the arbitration agreement was one sided, contained an allegedly unfair fee-splitting arrangement, and purportedly limited discovery—challenged the validity of the arbitration agreement as a whole and thus were challenges for the arbitrator).

In any event, assuming *arguendo* that plaintiff challenged the enforceability of the delegation clauses, the Court determines that the delegation clauses are enforceable.

Under New York state law, "[a]n unconscionable contract has been defined as one which 'is so grossly unreasonable or unconscionable in the light

---

[11] In his opposition to defendant's reply brief, plaintiff also claimed that the arbitration agreement is "void due to Breach of Contract" because D&B purportedly breached its obligation under the employee handbook to "thoroughly investigate" plaintiff's claims. (ECF No. 37 at 1.)  To the extent plaintiff claims that the arbitration agreement is void, the Court concludes that

it must also defer this issue to the arbitrator.  The parties agreed to delegate issues of validity to the arbitrator, and plaintiff's claim clearly challenges the validity of the arbitration agreement as a whole, and not the validity of the delegation clauses specifically.

of the mores and business practices of the time and place as to be unenforc[ea]ble according to its literal terms.'" *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988) (quoting *Mandel v. Liebman*, 303 N.Y. 88, 94 (1951)).   Ordinarily, a contractual provision will be held unenforceable only where it "was both procedurally and substantively unconscionable when made." *Id.*  Inquiry into procedural unconscionability "requires an examination of the contract formation process and the alleged lack of meaningful choice," and often entails consideration of "the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." *Id.* at 10-11 (internal citations omitted); *see, e.g.*, *Dallas Aerospace, Inc. v. CIS Air Corp.,* 352 F.3d 775, 787 (2d Cir. 2003).  The substantive unconscionability inquiry focuses on whether the terms of the contract are "unreasonably favorable to the party against whom unconscionability is urged." *Gillman,* 73 N.Y.2d at 12.  Although both procedural and substantive unconscionability are usually prerequisites to a determination that a contractual provision is unenforceable, "there have been exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." *Id.*  However, as *Gillman* indicates, such cases are rare.  *See, e.g.*, *Dallas Aerospace,* 352 F.3d at 787 ("[I]t is only in the truly 'exceptional case[ ]' that substantive unconscionability alone can vitiate a contractual duty."  (second alteration in original) (quoting *Gillman*, 73 N.Y.2d at 12)).

Assuming plaintiff argues that the delegation clauses are unenforceable due to inequality of bargaining power, the Court concludes that this argument fails for several reasons.   First "'mere inequality of bargaining power' between employers and employees is not alone sufficient to hold arbitration agreements unenforceable." *Desiderio*, 191 F.3d at 207 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991)).  Second, to the extent plaintiff claims that the delegation clauses are unenforceable because he was required to agree to arbitrate arbitrability issues in order to commence employment at D&B, courts in this circuit have likewise correctly held that the "mere fact that an agreement to arbitrate was required as a condition of employment, or continued employment, . . . is insufficient to invalidate the provision." *Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324, 329 (S.D.N.Y. 2003).   Third, insofar as plaintiff bases his inequality of bargaining power argument on *Armendariz*, the arbitration agreement between plaintiff and D&B is clearly distinguishable from that in *Armendariz*.  Again, in *Armendariz*, the court found that the at-issue arbitration agreement's nonmutual requirement that employees arbitrate wrongful termination claims was unconscionable.  6 P. 3d at 694. Here, by contrast, the arbitration agreement between plaintiff and D&B mutually obligates both plaintiff and D&B to arbitrate disputes (excepting only claims irrelevant to the instant action).  (Yarbrough Decl. Ex. B at 3.)

Plaintiff's claim that the arbitration agreement limits available damages or remedies is also baseless.  The arbitration agreement provides, in relevant part, that "the arbitrator may award such legal or equitable relief as is just and reasonable and authorized by law and which the arbitrator deems appropriate."  (*Id.* at 6.)

Finally, to the extent plaintiff argues that the arbitration agreement's discovery procedures "causes the arbitration of his claim that the [arbitration agreement] is unenforceable to be unconscionable," *Rent-A-Center*, 561 U.S. at 74, the Court also rejects such an argument.   As an initial matter, in *Gilmer*, the Supreme Court found that the fact that discovery might be more limited in arbitration is not a sufficient basis to invalidate an agreement to arbitrate.  500 U.S. at 31 ("Although [discovery] procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985))).   Moreover, the arbitration agreement states, in relevant part:

> **Formal and Informal/Voluntary Discovery.**   The Parties shall cooperate in the voluntary exchange of such documents and information as will serve to expedite the arbitration. Discovery shall be conducted in the most expeditious and cost-effective manner possible and shall be limited to that which is relevant and for which each Party has a substantial, demonstrable need.   Formal discovery shall be at the discretion of the arbitrator and allowed only upon a showing of good cause.

(Yarbrough Decl. Ex. B at 5.)  Plaintiff has failed to demonstrate that this provision or any other provision in the arbitration agreement unconscionably curtails discovery with respect to his enforceability (or merits-based) claims.

In sum, plaintiff has presented no basis on which this Court could conclude that the delegation clauses are "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforc[ea]ble according to [their] literal terms." *Gillman*, 73 N.Y.2d at 10 (quoting *Mandel*, 303 N.Y. at 94).   Accordingly, the Court determines that the delegation clauses in the arbitration agreement are enforceable.

D. The Court Stays This Action

Under the FAA, "the court 'shall' stay proceedings pending arbitration, provided . . . certain conditions are met." *Katz*, 794 F.3d at 345 (citing 9 U.S.C. § 3).   The Second Circuit has held that this language "mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested."   *Id.* Accordingly, because the Court refers all of the instant claims to arbitration, and because defendant requests a stay, the Court stays the action pending arbitration.

## IV. CONCLUSION

For the foregoing reasons, the Court grants defendant's motion to compel and stays this action in favor of arbitration. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Joseph F. Bianco
United States District Judge

Date:      January 24, 2018
           Central Islip, NY

\*      \*      \*

Plaintiff proceeds *pro se*. Defendant is represented by Celeste Yeager of Littler Mendelson, P.C., 2001 Ross Avenue, Suite 1500, Dallas, Texas 75201 and Rachel Anne Seaton of Littler Mendelson, P.C., One Newark Center, 8th Floor, Newark, New Jersey 07102.